J-S44045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: W.I.W.-W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1465 EDA 2024 |

Appeal from the Order Entered May 13, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000680-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: W.I.W.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1466 EDA 2024 |

Appeal from the Decree Entered May 13, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000352-2023

BEFORE:  NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED JANUARY 8, 2025**

S.W. ("Mother") appeals from the decree which involuntarily terminated her parental rights to her biological son, W.I.W.W. ("Child"), born in May 2020, and the order changing Child's permanency goal from reunification to

adoption.[1]  Additionally, Mother's court-appointed counsel, Gary S. Server, Esquire, has filed a motion to withdraw and a brief styled pursuant to *Anders v. California*, 386 U.S. 738 (1967).  After careful review, we grant Attorney Server's motion to withdraw, affirm the termination decree, and dismiss Mother's appeal from the goal change order as moot.

We summarize the following relevant facts and procedural history based upon the stipulated facts from the termination and goal change petitions, along with the records from Child's dependency docket.  *See* N.T., 5/13/24, at 8-9.  In May 2020, this family came to the attention of the Philadelphia Department of Human Services ("DHS" or "the Agency") after it received a report that Child tested positive for fentanyl upon his birth at Thomas Jefferson University Hospital in Philadelphia.  Child spent approximately one month in the neo-natal intensive care unit due to fentanyl withdrawal symptoms.  During its investigation, DHS learned that Mother's four older children resided in New Jersey with their maternal aunt through that state's agency

---

[1] The identity of Child's father is unknown.  Accordingly, the trial court terminated the parental rights of any unknown putative father by separate decree.  K.S.S., who was identified as Child's maternal uncle, was listed as the father on Child's birth certificate; however, the court found he was not the biological father.  Accordingly, the court determined that K.S.S. had no standing in the dependency matter.  Despite this previous finding, the court terminated "any parental rights that [K.S.S.] believes he may have [to Child]." N.T., 5/13/24, at 14.  Neither K.S.S., nor any other individual, has filed a notice of appeal.

counterpart – the Department of Children and Families, Division of Child Protection and Permanency ("DCPP").

On June 29, 2020, DHS obtained emergency custody of Child upon his discharge from the hospital and placed him in kinship care with a maternal cousin who, as best we can discern, lived in Pennsylvania. The trial court adjudicated Child as dependent on August 19, 2020. Child remained with the maternal cousin for approximately four months before being removed due to ongoing safety concerns. In October 2020, Child was placed in his pre-adoptive foster home, where he consistently remained through the time of the combined termination and goal change proceeding.

The trial court established Child's initial permanency goal as reunification, and ordered Mother to, *inter alia*: attend a dual diagnosis assessment for substance use and mental health at the Clinical Evaluation Unit ("CEU"); participate in random drug screens at the CEU; and participate in supervised visitation with Child. These goals remained substantially similar throughout the course of the ensuing dependency proceedings.

The certified record reflects that Mother failed to attend any of the single case plan meetings conducted by the Community Umbrella Agency ("CUA") that provided her services during Child's dependency. Furthermore, Mother was largely absent from the court hearings held over the course of the dependency proceedings, which spanned over three years.

Regarding Mother's goals related to her substance use, Mother completed the dual diagnosis assessment at the CEU on January 19, 2021, which recommended no further treatment. After Mother consistently failed to appear at court hearings for over a year, the trial court ordered her to submit a new substance use evaluation, which she never completed. *See* Exhibit 1 at ¶¶ bb, dd, hh. The trial court ordered Mother to attend drug screens at nearly every dependency court hearing, yet the record reveals that she attended a total of only three screens, the last of which was in September 2022. *See id*. at ¶¶ l, t, y, bb, dd, hh-mm, oo, qq.

The certified record is not clear as to the frequency that Mother was offered supervised visits with Child during his dependency. The supervised visitations were initially held virtually due to COVID-19 restrictions and were later held at the Agency once restrictions were lifted. Although Mother was briefly permitted to have visits in the community between January and September 2022, these reverted back to the Agency on September 26, 2022, for reasons not clearly stated in the record. *See id*. at ¶¶ dd, hh, jj. Overall, while Mother participated in visits with Child, she never progressed beyond supervised visitations.

On September 8, 2023, the Agency petitioned for the involuntary termination of Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The Agency filed a goal change petition on the same date. After several continuances, the trial court held a combined

hearing on both petitions on May 13, 2024. At that time, Child, who was then three years old, had been dependent for virtually the entirety of his life. Mother was represented by Attorney Server, and Child was represented by his guardian *ad litem* ("GAL") from his dependency proceedings, William Rice, Esquire.[2]

---

[2] Our Supreme Court has held that "appellate courts should engage in *sua sponte* review to determine if [trial] courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with" 23 Pa.C.S.A. § 2313(a). *In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020). Further, if the appointed legal interest counsel also serves as GAL, "appellate courts should review *sua sponte* whether the [trial] court made a determination" that the child's legal interests and best interests "did not conflict." *Id*. These findings by the trial court must typically be conducted before counsel's appointment and should appear within the orders appointing counsel. *See id*. at 1236. Our review of the certified record reveals that the trial court did not issue a separate order appointing the GAL to represent Child in the termination proceeding. Consequently, no conflict determination was made. However, the GAL appeared at the relevant proceeding and represented Child as his "Child Advocate." N.T., 5/13/24, at 5. Insofar as Child was three years old at the time of these proceedings, we observe no structural defect. *See In re T.S.*, 192 A.3d 1080, 1092-93 (Pa. 2018) (holding that "if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests[,]" then the mandate of § 2313(a) "is satisfied where the court has appointed an attorney-[GAL] who represents the child's best interests during such proceedings."). Under these circumstances, we need not vacate the decree. Nevertheless, we caution the trial court against failing to comply with the Supreme Court's mandate to issue a separate order appointing counsel to represent the legal interests of a child involved in an involuntary termination matter and, if the appointed counsel also serves as GAL, to determine "prior to appointment" whether the child's dual interests did not conflict. *K.M.G.*, 240 A.3d at 1236; *see also Interest of A.J.R.O.*, 270 A.3d 563 (Pa. Super. 2022) (vacating involuntary termination decree because the trial court failed to determine whether the child's legal interests and best interests conflicted

*(Footnote Continued Next Page)*

Three CUA caseworkers, a CEU representative, and Child's foster parents were all present at the hearing. Although the trial court found that DHS made reasonable efforts to serve Mother with notice of the hearing, she did not attend. *See id*. at 6-7. No direct testimony was adduced at the combined hearing. Instead, Attorney Server, counsel for DHS, and the GAL stipulated to the facts from the Agency's petitions, which was entered as Exhibit 1.[3] *See* N.T., 5/13/24, at 8-9. Additionally, all counsel specifically stipulated to the following:

> There's been an additional stipulation by and between counsel that since August of 2023 to the current date[, M]other has a settled purpose of relinquishing her parental rights by failing to complete her single case plan objectives as established by the reasons the case came into care. Namely that [Child] was born with fentanyl in his system at the hospital. And those objectives being the screens that she was sent for by this court to engage in drug and alcohol treatment . . . as well as others. And [Child] needs permanency. He's been in care for over three years now. [He h]as been residing with the same . . . foster placement since October of 2020 and is bonded to those parents . . . and shares no parental or maternal bond with [Mother.]

*Id*. at 10-11 (unnecessary capitalization omitted).

On the same day as the hearing, the trial court entered a decree involuntarily terminating Mother's parental rights to Child pursuant to 23

---

prior to appointing a single attorney to represent both; and remanding to allow the trial court to make the required determination).

[3] It was not specified at the hearing if the statement of facts from the termination petition or the goal change petition was admitted into evidence, but as the statements of facts in both petitions are identical, this is inconsequential to our review.

Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On the same date, the trial court entered an order changing Child's permanency goal from reunification to adoption. Attorney Server, on behalf of Mother, timely filed separate notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[4] On August 29, 2024, the trial court submitted a responsive Rule 1925(a)(2)(ii) opinion. In this Court, Attorney Server filed a motion to withdraw and an *Anders* brief.

When faced with an *Anders* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. *See In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014).[5] Accordingly, we begin our review by addressing Attorney Server's motion to withdraw and accompanying brief. As this Court has explained, in order to withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

---

[4] Attorney Server filed an application with this Court to consolidate the termination of parental rights and goal change appeals, which this Court granted. *See* Pa.R.A.P. 513.

[5] We note that this Court has expanded the *Anders* procedure to appeals from decrees involuntarily terminating parental rights. *See In re Adoption of B.G.S.*, 240 A.3d 658, 661 (Pa. Super. 2020) (holding that").

With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

*In re J.D.H.*, 171 A.3d 903, 907 (Pa. Super. 2017) (citations and quotation marks omitted).

Additionally, counsel must file a brief that meets the following requirements established by the Pennsylvania Supreme Court in *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009):

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*X.J.*, 105 A.3d at 3-4 (citation omitted).

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Id*. at 4 (citations omitted). Our independent review is not limited to the issue(s) discussed by counsel, but extends to "additional, non-frivolous issues" that may have been overlooked by counsel. *J.D.H.*, 171 A.3d at 908 (citation omitted). An appeal is frivolous when it "lacks any basis in law or fact." *Santiago*, 978 A.2d at 356 (citation omitted).

- 8 -

Here, Attorney Server has submitted both a motion to withdraw and an *Anders* brief certifying that, following a conscientious and thorough review of the record and relevant case law, he believes Mother's appeal is frivolous. Attached to the motion is a letter, dated and served to Mother on September 29, 2024, which suitably advised her of her rights. *See* Motion to Withdraw, 9/29/24, at 6 (unpaginated). Specifically, the letter described Mother's rights to respond to the motion and *Anders* brief in writing to this Court, retain new counsel or proceed *pro se*, and to raise additional points she deems worthy of this Court's attention.[6] *See id*. Attorney Server also served Mother with a copy of his *Anders* brief on the same date as the letter. *See Anders* Brief at 24.

Further, the *Anders* brief submitted by Attorney Server provides a summary of the procedural and factual history of this matter, including citations to the certified record. *See id*. at 7-9. The *Anders* brief also contains a discussion of the controlling Pennsylvania law relevant to the circumstances of Mother's case. *See id*. at 11-21. Attorney Server identifies several arguments that could potentially support Mother's challenges to the termination of her parental rights and the goal change to adoption. *See id*. Attorney Server provides an explanation of why he ultimately concludes that these potential arguments are frivolous, considering the evidence supporting

---

[6] To date, this Court has not received any communication from Mother regarding this appeal.

the trial court's termination decree and goal change order. *See id*. Thus, we conclude that Attorney Server has complied with the technical and procedural requirements of *Anders* and *Santiago*.

In the *Anders* brief, Attorney Server raises the following issues for our review:

1. Whether there is anything in the record that might arguably support the appeal that obviates a conclusion that the appeal is frivolous?

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8)?

3. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of Child as required by the Adoption Act, 23 Pa.C.S.A. § 2511(b)?

4. Whether the trial court committed reversible error when it concluded that a change of goal to adoption would be in the best interest of Child?

*Anders* Brief at 6 (cleaned up).[7]

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility

_____

[7] DHS filed a letter with this Court stating it would not file a brief in this matter. While the GAL did not participate in the instant appeal, he agreed with the Agency's position during the combined hearing. *See* N.T., 5/13/24, at 12.

- 10 -

determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *See Interest of M.E.*, 283 A.3d at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the trial court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to section 2511(b), which focuses upon the

child's developmental, physical, and emotional needs and welfare. ***See In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013); ***see also*** 23 Pa.C.S.A. § 2511(b). This Court need only agree with the trial court's determination as to any one subsection of section 2511(a), in addition to section 2511(b), in order to affirm termination. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Given this latitude in our review of a termination decree, we confine our analysis to subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).[8]

In order to satisfy section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021). Grounds for termination pursuant to section 2511(a)(2), however, "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id*. (citing *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010)). In reviewing the trial court's findings pursuant to section 2511(a)(2), we remain mindful that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *A.H.*, 247 A.3d at 443.

In the *Anders* brief, Attorney Server addressed Mother's contention that the Agency did not meet its evidentiary burden to terminate her parental rights under section 2511(a)(2). *See Anders* Brief at 15. While Attorney Server ultimately concluded this claim is frivolous based on the evidence presented at the combined hearing, he explains that Mother "believes that

_____

[8] By analyzing only section 2511(a)(2), we make no conclusions as to the validity of the trial court's findings pursuant to Sections 2511(a)(1), (5), and (8). *See B.L.W.*, 843 A.2d at 384. Based on this disposition, we need not review sections 2511(a)(1), (5), and (8).

legally she has fulfilled enough of her objectives to achieve reunification" and that she also "believes she is currently capable" of caring for Child. *Id*. at 18.

The trial court considered Mother's challenge to its determination regarding subsection 2511(a)(2) and determined that it lacked merit. The court reasoned:

> In the instant case, Mother has shown "repeated and continued incapacity" to meet her single case plan objectives necessary for the physical and mental well-being of Child. *See* 23 Pa.C.S.A. § 2511(a)(2). As both Mother's counsel and counsel for DHS stipulated, Mother has been offered CUA assistance since September 2020. *See* N.T., 5/13/24, at 10-12. However, . . . Mother failed to submit court-ordered drug screens at the CEU on 9/26/22, 11/1/22, 12/7/22, and 1/12/23. *See* Exhibit 1 at ¶ w. Considering that drug abuse was the main reason Child was removed from Mother's care in the first place, Mother's failure or refusal to complete these objectives demonstrates a pattern of refusal to complete what is necessary for reunification, which justifies termination of Mother's parental rights to Child under section 2511(a)(2).

Trial Court Opinion, 8/29/24, at 6-7 (cleaned up).

Our review of the certified record confirms ample support for the trial court's findings and Attorney Server's assessment that Mother's claim regarding subsection 2511(a)(2) is frivolous. Initially, we note that Mother failed to appear at the termination and goal change hearing, despite having been provided notice and copies of the Agency's petitions, which included the statement of facts (Exhibit 1) to which Attorney Server stipulated. *See* N.T., 5/13/24, at 6-9. Consequently, the facts as stated in Exhibit 1 are undisputed. Further, Attorney Server specifically stipulated that the reason Child was removed from Mother's care was her use of fentanyl during pregnancy, and

that Mother failed to complete her single case plan objective of drug screens. *See id*. at 10.

The record also reflects that CUA began providing services to Mother on September 5, 2020. *See* Exhibit 1 at ¶ m. Although Mother never attended the meetings with CUA to discuss her single case plan objectives for reunification, she did attend the first four hearings after Child was removed from her care in mid-2020 through early 2021. *See id*. at ¶¶ n, z, cc; *see also* Recommendation for Shelter Care, 7/1/20; Order of Adjudication and Disposition, 8/18/20; Permanency Review Order, 1/4/21; Permanency Review Order, 5/26/21. Therefore, Mother was aware of her court-ordered objectives regarding her substance use. The trial court rated Mother's compliance with her objectives as minimal. *See* Permanency Review Order, 9/26/22.

Most importantly, Mother "recently tested positive for drugs" in connection with her New Jersey DCPP dependency case, which was set to close but could not because of the positive test. Exhibit 1 at ¶ tt. While Mother did attend the first ordered substance use evaluation in early 2021, she never attended the second ordered evaluation after she had failed to appear at court hearings for over a year. *See id*. at ¶¶ v, bb, dd, hh. Mother was ordered to submit at least three random drug screens at the CEU at nearly every court hearing, totaling over forty ordered screens. *See generally* Dependency Docket. Despite these numerous orders, the record reflects that Mother submitted a total of only three screens, with the last screen being on

September 22, 2022. *See* Exhibit 1 at ¶ ii. Several times in 2022, the trial court specifically ordered Mother to submit hair follicle screens, which the record does not disclose were completed. *See* Permanency Review Order, 7/25/22; *see also* Permanency Review Order, 9/26/22; Permanency Review Order, 12/28/22. Accordingly, the record undoubtedly evidences that Mother suffers from repeated and continued incapacity in relation to her substance use issues.

Further, the record is clear that Mother's incapacity has caused Child to be without essential parental care, control, or subsistence. There is no dispute that Child was never in Mother's care as DHS was granted emergency custody upon his discharge from the hospital. Over the course of Child's dependency, he was cared for by a maternal cousin and subsequently his current foster parents. It is undisputed that Mother has failed to achieve her goals for reunification, and therefore Child has been without her essential parental care, control, or subsistence all his life.

Regarding the final factor as to section 2511(a)(2), the record confirms that Mother's incapacity cannot or will not be remedied. Not only had Mother "recently tested positive for drugs" in her New Jersey DCPP dependency case, she had not completed the re-ordered substance use evaluation from 2022 and had not submitted a drug screen for the case *sub judice* in almost two years despite being consistently ordered to do so. Exhibit 1 at ¶ hh, ii, tt. Therefore, we discern no abuse of discretion or error of law as to the trial

court's findings that termination of Mother's parental rights under section 2511(a)(2) was warranted. Accordingly, we agree with Attorney Server's assessment that Mother's appeal as to this subsection is frivolous.[9]

Having concluded that adequate grounds for termination exist pursuant to section 2511(a), we now turn to section 2511(b), which requires that the trial court "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. Our Supreme Court has directed that a section 2511(b) inquiry must include consideration for the bond between the parent and the child. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). Our Supreme Court has further explained that "[i]t is only a necessary and beneficial bond, after all, that should be maintained." *Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023).

_____

[9] Attorney Server also raises a potential argument that the Agency did not provide Mother with reasonable efforts for reunification. *See Anders* Brief at 14-15. However, as Mother never raised this issue in the trial court, it is waived. *See* Pa.R.A.P. 302(a) (providing that issues not raised in the trial court are waived and cannot be raised for the first time on appeal). Moreover, Attorney Server concluded that this argument is frivolous in light of our Supreme Court's holding in *In re D.C.D.*, 105 A.3d 662 (Pa. 2014) (holding that an agency's failure to provide reasonable efforts to a parent for reunification does not impede termination of parental rights). Our review of the record reflects that the trial court consistently found that DHS made reasonable efforts to finalize Child's permanency plan. *See generally* Dependency Docket (every Permanency Review Order found that DHS made reasonable efforts). Thus, even if Mother had preserved this issue for our review, we would have concluded that it is frivolous.

"[C]ase law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." **K.T.**, 296 A.3d at 1109. Further, trial courts "must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." **Id**. at 1106. We will not disturb a trial court's section 2511(b) assessment if the factual findings are supported by the record. **See M.E.**, 283 A.3d at 839.

In the **Anders** brief, Attorney Server offers that it could be argued that Mother "believes that [Child] would be best off with her[,] and that she and only she is best suited to provide for the developmental, physical, and emotional needs of [Child]". **Anders** Brief at 19. Attorney Server ultimately concludes this claim is frivolous based on the evidence presented at the combined termination and goal change hearing. **See id**. at 19-21.

The trial court considered Mother's challenge to its determination regarding section 2511(b) and determined that it lacked merit. The court found that "termination best serves the developmental, physical, and emotional needs of [Child.]" Trial Court Opinion, 8/29/24, at 3; **see also** 23 Pa.C.S.A. § 2511(b).

Our review verifies that the trial court's findings are supported by the certified record and corroborates Attorney Server's conclusion that Mother's claim with regard to subsection (b) is frivolous. Significantly, after Mother

- 18 -

failed to appear at the combined hearing, Attorney Server specifically stipulated that Child "shares no parental or maternal bond with [Mother.]" N.T., 5/13/24, at 11. This stipulation clearly confirms that there was no necessary and beneficial bond between Mother and Child. *See K.T.*, 296 A.3d at 1109. While there was evidence that Mother attended some visitation, her frequency of attendance and quality of the visits are unclear from the record. Moreover, Mother's visits never progressed past supervised visitation in over three years. *See generally* Dependency Docket; *see also* Exhibit 1 at ¶¶ i, l, s, t, y, aa, dd, hh, jj, nn-qq.

Further, there was undisputed evidence presented about Child's need for permanency and his established bond with his foster parents. Child had been removed from Mother's care for more than three years at the time of the combined hearing. All counsel stipulated that Child "needs permanency[,]" and "is bonded" to his pre-adoptive foster parents, with whom he has consistently resided "since October of 2020[.]" N.T., 5/13/24, at 10-11. Over the course of Child's dependency, the trial court consistently found that he was being well-cared for by his foster parents. *See* Permanency Review Order, 1/4/21; *see also* Permanency Review Order, 5/26/21; Permanency Review Order, 5/2/23. Therefore, we discern no abuse of discretion or error of law in the trial court's conclusion that DHS met its evidentiary burden pursuant to section 2511(b). Accordingly, we agree with Attorney Server's assessment that Mother's appeal as to subsection (b) is frivolous. Having

found no merit to Mother's challenge to the termination decree pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b), we affirm the decree involuntarily terminating her parental rights to Child.

We now turn to Mother's challenge to the trial court's order to change Child's permanency goal from reunification to adoption. *See Anders* Brief at 6. Given our disposition concerning the involuntary termination of Mother's parental rights to Child, we conclude that her appeal from the goal change order is moot. *See Interest of A.M.*, 256 A.3d 1263, 1272-73 (Pa. Super. 2021) (declaring goal change issues moot once parental rights are terminated).

Finally, our independent review of the certified record reveals no preserved non-frivolous issues that would arguably support this appeal. Thus, we grant Attorney Server's motion to withdraw from representation, affirm the decree involuntarily terminating Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b), and dismiss the appeal from the goal change order as moot.

Attorney Server's application to withdraw granted. Termination decree affirmed. Appeal from goal change order dismissed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date:   1/08/2025